IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANDREA ADAMS,

        Plaintiff,                      No. CIV S-09-2437 DAD (TEMP)

    vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.               <u>ORDER</u>

_____/

        This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment or remand and defendant's cross-motion for summary judgment. For the reasons explained below, the court will grant plaintiff's motion for summary judgment or remand, deny the Commissioner's cross-motion for summary judgment, and remand the case under sentence four of 42 U.S.C. § 405(g) for further proceedings.

**PROCEDURAL BACKGROUND**

        On January 25, 2006, plaintiff filed applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act) and for Supplemental Security Income (SSI) under Title XVI, alleging disability beginning on June 1, 1998. (Transcript (Tr.) at 146-157.) The application was denied initially and upon reconsideration. (Tr. at 82-90, 94-106.)

1

Two hearings were held before Administrative Law Judge (ALJ) Peter F. Belli on August 15, 2008 and March 10, 2009.  (Tr. at 20-40, 41-77.)  Plaintiff was represented by counsel and testified at the hearings.  A vocational expert also testified at the second hearing.  In a decision dated April 22, 2009, the ALJ found that plaintiff was not entitled to DIB or SSI benefits.  (Tr. at 9-16.)  The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2004.
>
> 2. The claimant has not engaged in substantial gainful activity since April 1, 2002, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3.  The claimant has the following severe impairments: malingering, obesity, left ulnar nerve repair, and personality disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526,  416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), including lifting, carrying, pushing, and pulling 10 pounds frequently and 20 pounds occasionally, sitting for eight of eight hours with normal breaks, standing/walking two of eight hours with normal breaks and with no prolonged standing or walking, no climbing of ladders, ropes, or scaffolds, occasional stooping, crouching, crawling, and kneeling, and there are no limitations in her ability to understand, remember, and carry out short, simple instructions, and she is moderately limited (i.e., more than mild but less than markedly limited and is still able to function satisfactorily) in understanding, remembering and carrying out detailed instructions, responding appropriately to work pressures in a usual work setting, and she is slightly limited in her ability to make judgments on detailed work-related decisions, responding appropriately to changes in routine work settings, and interacting appropriately with the public, supervisors, and coworkers, and she can frequently interact with the public and supervisors.
>
> 6. The claimant is capable of performing past relevant work as a telemarketer and answering service operator.  This work does not require the performance of work-related activities precluded by the

/////

claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2002 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. at 9-16.)

On June 26, 2009, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. at 1-3.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on August 28, 2009.

## LEGAL STANDARD

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

improper legal standard was applied in weighing the evidence, <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Section 416.920.  <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987).  The five-step process has been summarized as follows:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

<u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  <u>Yuckert</u>, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  <u>Id.</u>; <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999).

**APPLICATION**

Plaintiff argues that the ALJ committed three principal errors in finding plaintiff not disabled:  (1) the ALJ failed to discuss relevant opinion evidence and improperly rejected the opinion of a treating physician; (2) the ALJ failed to properly evaluate plaintiff's obesity; and (3) the ALJ failed to properly evaluate and credit third party testimony regarding plaintiff's pain and

functional limitations.

**I. Evaluation and Crediting of Medical Evidence**

Plaintiff contends that in assessing her residual functional capacity and finding that she could frequently interact with the public and supervisors, the ALJ ignored relevant record medical evidence contrary to this finding. Because of this asserted error, plaintiff contends that the ALJ incorrectly found plaintiff could perform her past relevant jobs as a telemarketer and answering service operator.

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ." Lester, 81 F.3d at 830. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. Smolen v. Chater, 80 F.3d at 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

A treating physician's uncontradicted opinion may be rejected only for clear and convincing reasons, while a treating physician's opinion that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31. The ALJ need not give weight to a conclusory opinion supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113-14 (9th Cir. 1999) (affirming rejection of a treating physician's "meager opinion" as conclusory, unsubstantiated by relevant medical documentation, and providing no basis for finding the claimant disabled); see also Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830. An examining physician's uncontradicted opinion, like a treating physician's, may be rejected only for clear and convincing reasons, and

when an examining physician's opinion is controverted by another doctor's opinion, the examining physician's opinion may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Id. at 830-31. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." Id. at 831 (emphasis in original).

      The ALJ found plaintiff was slightly limited in interacting appropriately with the public, supervisors, and coworkers and could frequently interact with the public and supervisors. (Tr. at 14.) The Commissioner contends that this residual functional capacity assessment is based on substantial evidence in that the assessment is consistent with that of Dr. Joyce, a psychiatric examiner, and Dr. Richwerger, a psychological examiner. (Tr. at 636, 814.) In summation of his findings, Dr. Joyce opined that plaintiff's "axis II pathology [borderline personality disorder] is entrenched enough that it would occasionally compromise her ability to respond appropriately to supervision, co-workers, or the usual work situation, including changes in routine setting." (Tr. at 637.) Dr. Richwerger opined that plaintiff "appears to have slight impairment in her ability to understand and accept instruction from supervisors . . . [and] interact with coworkers and the public." (Tr. at 814.) Setting aside whether these opinions indicate more restriction that the "frequent" interactions with the public and supervisors assessed by the ALJ,[1] of more concern to this court is the apparent total disregard by the ALJ of several opinions of record which completely undermine this assessment. In this regard, the state agency physicians found that plaintiff was moderately limited in the ability to interact appropriately with the general public and moderately limited in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. at 676.) Specifically, in the mental residual functional capacity assessment, the state agency physicians assessed a limitation that plaintiff is

---

[1] The court notes that in discussing the opinions of Drs. Joyce and Richwerger, the ALJ did not discuss these limitations but only referenced those portions of the opinions which supported the residual functional capacity ultimately assessed by the ALJ. (Tr. at 12.)

"restricted from all but the most minimalistic peer/public contact" and "[h]as the ability to perform simple tasks with lmtd [limited] public contact." (Tr. at 677, 681.)  The ALJ also ignored treating physician's Dr. Kyaw's opinion[2] that plaintiff would have difficulties with peers and employers. (Tr. at 15, 746.)  While the ALJ is not obliged to adopt the findings of the state agency physicians, the total lack of discussion in the ALJ's written decision of these medical opinions suggests that the record as a whole was not considered.  Under these circumstances, the court cannot find substantial evidence in the record as a whole supports the ALJ's residual functional capacity finding.

        The past relevant work identified by the vocational expert as jobs plaintiff could perform in response to the hypothetical posed by the ALJ, which included the ability to frequently interact with the public and supervisors, were telephone solicitor (DOT[3] 299.357-14)[4]

/////

---

[2] The ALJ rejected Dr. Kyaw's findings regarding plaintiff's physical functional limitations on the grounds that there was only a four-month treatment history and lack of objective medical findings to support the extreme limitations found. (Tr. at 15.)  In light of the conflicting opinion of examining physician Dr. Borges, which was based on his own independent clinical findings, and the findings of the state agency physician on a physical residual functional capacity assessment, the reasons set forth by the ALJ for rejecting Dr. Kyaw's opinion regarding physical limitations are specific and legitimate. (Tr. 536-543, 721-725.)

[3] The United States Dept. of Labor, Employment & Training Admin., Dictionary of Occupational Titles (4th ed. 1991), ("DOT") is routinely relied on by the SSA "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy." Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990).  The DOT classifies jobs by their exertional and skill requirements.  The DOT is a primary source of reliable job information for the Commissioner. 20 C.F.R. § 404.1566(d)(1).

[4] The DOT provides in relevant part: 299.357-014 TELEPHONE SOLICITOR (any industry) alternate titles: telemarketer; telephone sales representative

Solicits orders for merchandise or services over telephone: Calls prospective customers to explain type of service or merchandise offered.  Quotes prices and tries to persuade customer to buy, using prepared sales talk.  Records names, addresses, purchases, and reactions of prospects solicited. Refers orders to other workers for filling.  Keys data from order card into computer, using keyboard.  May develop lists of prospects from city and telephone directories.  May type report on sales activities.  May contact DRIVER, SALES ROUTE (retail trade; wholesale tr.) 292.353-010 to arrange delivery of merchandise.

and telephone answering service operator (DOT 235.662-026).[5] (Tr. at 67-68, 70-71.) It is apparent from the DOT's description of the duties involved with these jobs that frequent interaction with the public and supervisors is required. Because the ALJ's residual functional capacity finding is not supported by substantial evidence in the record as a whole, it follows that the ALJ's finding at step four of the sequential evaluation, that plaintiff can perform her past relevant work, is in error and the matter must be remanded for further findings in this regard.

**II. Obesity**

Plaintiff further contends the ALJ did not properly evaluate the effect of her obesity on her impairments. SSR[6] 02-1p directs adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, such as the assessment of an individual's RFC. The Ruling explains how obesity may increase the severity of related impairments, particularly musculoskeletal and respiratory impairments, and explains how the effects of obesity should be evaluated. An ALJ must evaluate the additional impact of a claimant's obesity both singly and in combination with the claimant's other impairments.

At step two of the sequential evaluation, the ALJ included obesity as a severe impairment. While there is little discussion in the ALJ's written decision regarding plaintiff's obesity, the ALJ did discuss the physical consultative examination and treating physician's

---

[5] The DOT provides in relevant part: 235.662-026 TELEPHONE-ANSWERING-SERVICE OPERATOR (business ser.) alternate titles: interceptor operator; telephone-interceptor operator
 Operates cord or cordless switchboard to provide answering service for clients. Greets caller and announces name or phone number of client. Records and delivers messages, furnishes information, accepts orders, and relays calls. Places telephone calls at request of client and to locate client in emergencies. Date stamps and files messages.

[6] Social Security Rulings "represent precedent final opinions and orders and statements of policy and interpretations that we have adopted." 20 C.F.R. § 402.35(b)(1). Social Security Rulings are "binding on all components of the Social Security Administration." Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); cf. Silveira v. Apfel, 204 F.3d 1257, 1260 (9th Cir.2000) ("This court defer[s] to Social Security Rulings ... unless they are plainly erroneous or inconsistent with the Act or regulations").

examination in which plaintiff's height and weight and related obesity were noted. (Tr. at 12, 721-725 (5'2", 288 lb. at April 2007 examination; physician observed that plaintiff "does waddle with a gait"), 750-752 (271 lb. at April 2008 exam, patient described as obese female in no apparent distress).) At step four of the sequential evaluation, the ALJ determined that plaintiff's residual functional capacity was limited to light work, with no prolonged standing or walking, no climbing of ladders, ropes, or scaffolds, occasional stooping, crouching, crawling, and kneeling. These limitations are consistent with that of the examining comprehensive internal medicine evaluator, who was aware of plaintiff's obesity and which limitations appear to accommodate plaintiff's obesity impairment. (Tr. at 725). Plaintiff cites no evidence in the record that the severity of her other impairments was increased by her obesity such that additional limitations were required. Plaintiff's conclusory argument concerning the alleged application of the wrong legal standard to evaluate the impact of her obesity is unpersuasive. The court therefore finds no error in the ALJ's application of SSR 02-1p to the facts of this case.

### III. Laywitness Evidence

Finally, plaintiff contends that the ALJ did not adequately address the third party statements of her mother, Mary Geronimo, or her best friend, Marissa Heard. The testimony of lay witnesses, including family members and friends, reflecting their own observations of how the claimant's impairments affect his or her activities must be considered and discussed by the ALJ. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006); Smolen, 80 F.3d at 1288; Sprague, 812 F.2d at 1232. Persons who see the claimant on a daily basis are competent to testify as to their observations. Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999); Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993). If the ALJ chooses to reject or discount the testimony of a lay witness, the ALJ must give reasons germane to each particular witness. Regennitter, 166 F.3d at 1298; Dodrill, 12 F.3d at 919. The mere fact that a lay witness is a relative of the claimant cannot be a ground for rejecting the witness's testimony. Regennitter, 166 F.3d at 1298; Smolen, 80 F.3d at 1289. Nor does the fact that medical records

do not corroborate the testimony provide a proper basis for rejecting such testimony. Smolen, 80 F.3d at 1289. It is especially important for the ALJ to consider lay witness testimony from third parties where a claimant alleges symptoms not supported by medical evidence in the file and the third parties have knowledge of the claimant's daily activities. 20 C.F.R. § 404.1513(e)(2); SSR 88-13.

The ALJ only cursorily addressed the "statements" of "third parties" and did not identify these statements nor discuss their contents. (Tr. at 15.) The court notes that not only were third party adult function reports filled out by plaintiff's mother and her friend, but also letters describing in some detail the observations made by other acquaintances are contained in the record. (Tr. at 209-216, 253-260, 305-310.) The ALJ rejected these statement on the basis of his conclusion that plaintiff is a malingerer. (Tr. at 15.) While there is some evidence of malingering in the record based on the findings of examining psychologist Dr. Richwerger, (Tr. at 806-815), given the consistency of these third party statements and their complete undermining of the ALJ's seminal finding that plaintiff can frequently interact with the public and supervisors, the court finds that the cursory reason given for discounting this laywitness evidence is not germane. On remand, the ALJ must discuss this relevant evidence and, if discredited, set forth germane reasons for rejecting it.

## CONCLUSION

The remaining question is whether to remand this case to the ALJ or to order the payment of benefits. "The decision whether to remand the case for additional evidence or simply to award benefits is within the discretion of the court." Stone v. Heckler, 761 F.2d 530, 533 (9th Cir. 1985). Generally, the Court will direct the award of benefits "in cases where no useful purpose would be served by further administrative proceedings or where the record has been thoroughly developed." Varney v. Secretary of Health and Human Services, 859 F.2d 1396, 1399 (9th Cir. 1987).

/////

1       Here, the ALJ relied on the vocational expert testimony that plaintiff could perform her past relevant jobs.  Because the ALJ does not appear to have considered the entire record in formulating the residual functional capacity which formed the basis of the hypothetical posed to the vocational expert, it appears that further proceedings are warranted and that further testimony from a vocational expert must be taken in this case.

      For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and additional findings addressing the deficiencies noted above.

      Accordingly, IT IS HEREBY IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment or remand (Doc. No. 24) is granted;

2. Defendant's cross-motion for summary judgment (Doc. No. 25) is denied; and

3. This matter is remanded for further proceedings consistent with this order.

DATED: February 3, 2011.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

jmm
adams.ss